UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-491-RJC-DCK

| | |
|---|---|
| ROBERT BREYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| US COTTON, LLC LONG TERM ) | |
| DISABILITY PLAN; US COTTON LLC; ) | |
| and RELIANCE STANDARD LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Judgment on the Pleadings and Supporting Memoranda (Doc. Nos. 34, 35, 41) and Plaintiff's Response in Opposition to the Motion. (Doc. No. 40).

**I.    BACKGROUND**

   A.    Procedural Background

Plaintiff Robert Breyan (Plaintiff) filed suit in this Court on August 7, 2012 for alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA) against Defendants US Cotton, LLC Long Term Disability Plan (the Plan), US Cotton LLC, (US Cotton), as administrator for the Plan, and Reliance Standard Life Insurance Company (Standard Insurance/the Company). (Doc. No. 1: Complaint). Specifically, Plaintiff alleged that Defendants, in violation of ERISA, wrongfully denied his benefits and breached their fiduciary duties. (Id. at 14-16). Additionally, Plaintiff seeks equitable relief in various forms, including: equitably estopping Defendants from denying Plaintiff his full benefits under the Plan without offsets, and, granting Plaintiff restitution for all funds wrongfully withheld by Defendants. (Id.

at 16-19). Finally, Plaintiff requests attorney's fees and costs pursuant to ERISA. (Id. at 19).

On March 7, 2013, the Company and the Plan filed a Motion for Judgment on the Pleadings and Supporting Memorandum. (Doc. Nos. 34, 35). Plaintiff filed a Response in Opposition on April 8, 2013. (Doc. No. 40). Defendants replied to Plaintiff's Response on April 18, 2013. (Doc. No. 41).

Defendant Standard Insurance did not file a Motion for Judgment on the Pleadings. Instead, on December 19, 2012, prior to the filing of the co-defendants' Motion for Judgment on the Pleadings, Custom Disability Solutions (CDS), a subsidiary of Defendant Standard Life Insurance, moved to dismiss under Rule 12(b)(6). (Doc. No. 19). On January 18, 2013, Plaintiff responded by objecting that CDS lacked standing as it was not a named party to this litigation and that CDS's motion referred to contents of the policy that had not been submitted into evidence and was therefore beyond the scope of the Court's inquiry under 12(b)(6). (Doc. No. 26). On February 8, 2013, CDS filed a copy of the Policy and an affidavit from Ms. Colleen Lauren, a manager of Long Term Disability at CDS, attesting that it was a true and accurate copy of the policy that provided benefits to Plaintiff. (Doc. Nos. 29-1; 29-2). On February 15, 2013, Plaintiff filed a Motion to Strike CDS's response as well as the policy and Ms. Lauren's affidavit. (Doc. No. 30). Specifically, Plaintiff sought to strike the response as raising factual and procedural issues not previously addressed in its motion. (Id.). Additionally, Plaintiff sought to strike the affidavit on the grounds that it was not permitted under Rule 12(b)(6) and that the contents exceeded the personal knowledge of the affiant. (Id.).

On July 10, 2013, this Court denied CDS's Motion to Dismiss on the grounds that CDS was not a named party to the suit and that North Carolina law does not confer capacity to sue or

be sued on unincorporated parts of corporations. (Doc. No. 45 at 4-5). The Court held that for Reliance to be identified as CDS, it would have to file a motion to amend the party name. (Id. at 5-6). Finally, the Court dismissed the Motion to Strike as moot and did not address "whether the absence of both CDS and Reliance from the Policy has any significance as it pertains to any other issue in the lawsuit." (Id. at 6).

      B.      Factual Background

In 1999, Plaintiff was diagnosed with chronic obstructive pulmonary disorder (COPD), which is a degenerative lung condition that impedes an individual's ability to breathe. (Doc. No. 1: Complaint at 3). Plaintiff's doctor advised him to maintain all insurance available to him, including life insurance, health insurance, and long-term disability coverage. (Id.). In 1999, Plaintiff purchased a private long-term disability policy to provide income for his family in the case that he was unable to work. (Id.). In 2000, Plaintiff began working for Defendant US Cotton as a maintenance mechanic and purchased long-term disability insurance through the Company. (Id.).

In 2002, Defendant US Cotton, through its human resources employees, held a meeting regarding employee benefits at the Charlotte, North Carolina plant where Plaintiff worked. (Id. at 3). At this meeting, US Cotton's human resources employees informed Plaintiff that the company had adopted the Plan, which would begin to provide long-term disability coverage for all employees and is subject to regulation under ERISA. (Id. at 4). The human resources employees told Plaintiff that the Plan would take the place of his current long-term disability, for which he had been paying. (Id.). In response to Plaintiff's question, the human resource employees informed Plaintiff that there was no difference between the company providing and

paying for long-term disability coverage and the Plaintiff's private insurance. (Id.). Defendants failed to inform Plaintiff about tax differences between paying for insurance and having the company purchase it for him. (Id.). At the same meeting, Plaintiff asked how much he would receive if he became disabled under the Plan and could not work. (Id.). The human resource officers told Plaintiff that he would receive "the same 60 percent you are already receiving now." (Id.). Finally, at no point did Defendants provide Plaintiff a summary plan description of the Plan or inform Plaintiff that there were any written documents that described the terms of the Plan. (Id.).

In 2003, US Cotton held another meeting at which Plaintiff once again asked about disability benefits. (Id. at 5). The human resource employees told him that he would receive sixty (60) percent of his pay, until the time a doctor released him or he achieved retirement age under the Plan. They did not inform Plaintiff or any other employees that there would be any offset in this amount for any reason. (Id.).

US Cotton held annual meetings regarding employee benefits which Plaintiff attended. (Id.). At such meetings, Plaintiff regularly inquired as to the amount of benefits he would receive if he became disabled under the Plan. Plaintiff was consistently informed that he would receive sixty percent of his pay. (Id.). Plaintiff was never informed of any offset, reduction or dimunition in this amount. (Id.).

In 2008, following the deaths of several family members due to COPD, Plaintiff spoke with Ms. Sue Ann Lang, a human resource employee at US Cotton about his concern that he could no longer work due to his medical condition. (Id. at 6-7). Ms. Lang assured Plaintiff that he would receive sixty percent of his pay under the terms of the Plan in the case that he could no

4

longer work.  (Id. at 7).  She did not inform Plaintiff of any possible reductions or offsets, nor did she provide him with a summary plan description.  (Id. at 7).  Plaintiff contends that he relied on the statements of Ms. Lang and other human resource employees in deciding to forego purchasing any other type of long term disability or income replacement insurance.  (Id. at 7-8).

In April 2010, Plaintiff was diagnosed as having Stage IV COPD and required an oxygen tank full time to breathe.  (Id. at 8-9).  His doctor wrote a note stating that Plaintiff was totally disabled and unable to work.  (Id. at 9).  Plaintiff presented the doctor's note to Ms. Lang who informed him that he would receive sixty percent of his pay until retirement age.  (Id.).  Plaintiff asked Ms. Lang if she was sure and she answered "Yes."  (Id.).

In July 2010, Plaintiff was approved for Social Security disability.  (Id.).  Despite this, Plaintiff continued to pay his premiums for the health insurance plan, which he often delivered personally to Ms. Lang.  (Id. at 10).  He once again inquired whether he was going to get sixty percent of his paycheck and Ms. Lang answered that he would.  (Id.).  She did not mention any reductions or offsets.  (Id.).  In August 2010, Plaintiff received a call from a representative of Defendant Standard Insurance who told him that Standard Insurance wanted him to become eligible for Social Security benefits and requested that Plaintiff sign paperwork so that they could work to that end.  (Id. at 10-11).  The representative informed Plaintiff that any Social Security disability benefits that Plaintiff received would offset his long-term disability benefits under the Plan.  (Id. at 11).

Shortly thereafter, Standard Insurance stopped payments of disability benefits to Plaintiff for a period of three (3) months until Plaintiff provided all documentation concerning his receipt of Social Security disability benefits.  (Id. at 13).  In a separate communication, a representative

5

from Standard Insurance informed Plaintiff that, due to his receipt of Social Security disability benefits, the Plan had overpayed Plaintiff by approximately $6,000. (Id.). Eventually, Plaintiff learned through a representative of Standard Insurance that the Plan would withhold $1,966.60 from Plaintiff's monthly disability checks from the Plan to offset the disability payments received from Social Security. (Id.).

Plaintiff alleges that he was qualified to receive $2,173.60 per month under the Plan, which represents sixty percent of his pre-disability wages. (Id. at 14). Plaintiff receives $1,966 per month in Social Security disability payments. (Id.). After the deductions for Social Security and to pay back fees, Plaintiff receives $107 per month from the Plan. (Id. at 14).

## II.   STANDARD OF REVIEW

Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). But the court need not accept allegations that "contradict matters properly subject to judicial notice or by exhibit." Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also FED. R. CIV. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes."). In contrast to a Rule 12(b)(6) motion, the court may consider the answer as well on a motion brought pursuant to Rule 12(c). Alexander v. City of Greensboro,

801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

### III. DISCUSSION

#### A. First Claim: Denial of Benefits Under ERISA

Defendants move this Court to dismiss the first claim on the grounds that Plaintiff has been provided all benefits under the terms of the Plan. Defendants further claim that Plaintiff, in seeking to recover the benefits that the Company's human resource employees told him that he would receive, is attempting to enforce an oral modification to a written contract.

##### 1. *Plaintiff's Objections to Consideration of the Policy*

A court may consider evidence in determining whether to dismiss a complaint if the evidence is integral to and explicitly relied on in the complaint and plaintiff does not challenge

7

its authenticity. Phillips v. LCI Intern., Inc., 190 F.3d 609, 618 (4th Cir. 1999). Pursuant to Rule 12(f), Plaintiff moved to strike the policy and the accompanying affidavit by Ms. Lauren on several grounds, including, that the introduction of the affidavit was improper in a motion to dismiss under Rule 12(b)(6), that the contents of the affidavit included matters beyond the personal knowledge of the affiant, that the affidavit is unreliable insofar as it contains statements in contradiction to matters in the responsive pleadings, and that it violates the local rules. (Doc. No. 30). In dismissing the motion to strike as moot, the Court did not consider Plaintiff's objections to the consideration of the policy and affidavit. It will consider them here.

The Court finds that both the policy and the affidavit by Ms. Lauren are proper for consideration without converting the motion into one for summary judgment. Plaintiff makes explicit reference to the policy in his complaint; indeed, the terms of the policy and the parties' obligations thereunder comprise the basis of this lawsuit. As such, the policy and its terms are integral to the complaint. Additionally, although Plaintiff lodges several objections against the consideration of the policy, it does not appear to the Court that he actually disputes the authenticity or accuracy of the document, which does not appear to have been altered in any way. His objections are that he has never seen a copy of the policy and that the affidavit contains substantive evidence beyond the personal knowledge of the affiant.

The Court disagrees. Ms. Lauren's affidavit is limited to authenticating the copy of the policy and attesting that it was the relevant policy at issue in the instant dispute. (Doc. No. 29-1). Her affidavit does not offer any facts beyond those necessary to authenticate the document. The affidavit does not address the substantive merits of any claim or defense but merely authenticates a copy of the policy that Plaintiff refers to in his complaint. Accordingly, it is

8

proper for consideration in the instant motion.

Finally, it is immaterial that the motion to which the policy was attached was denied on the grounds that the identity of the moving party was unclear to the Court. Local Rule 7.1(C)(3) states that "[e]xhibits previously filed shall not be re-filed by any party and may be incorporated into any other pleading by specific reference to the docket entry, exhibit number, and page." The Court finds the policy to be proper for consideration as the Plaintiff's objections are purely technical in nature and deal with issues not relevant to the authenticity of the document submitted.

### 2. *Defendants' Compliance Under the Terms of the Plan*

Both Plaintiff and Defendant agree to the following facts: Sixty percent of Plaintiff's monthly pre-disability wages equaled $2,173.60; Plaintiff received approximately $1,966.60 every month from Social Security disability; and, the Plan paid Plaintiff $107 per month which reflected the offset of his pre-disability wages by the amount he received from Social Security as well as back fees to recover the offset.

Plaintiff alleges that Defendants violated their contractual obligation to furnish long-term disability payments to Plaintiff by wrongfully denying benefits in violation of the Plan provisions and ERISA. Specifically, Plaintiff alleges that he is due the amount that the human resources employees informed him he would receive – sixty percent of his salary until retirement age – without being reduced or offset in any way.

Defendants contend that this claim fails because the Plan has provided all benefits promised under the written terms of the Plan. Further, they contend that Plaintiff's claim amounts to an attempt to argue that the terms of the contract had been modified by the oral

9

representations of Defendants' representatives.

A plaintiff may bring a claim under ERISA § 502(a)(1)(B) to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claim brought under section 502(a)(1)(B) "stands or falls by the terms of the plan." Kennedy v. Plan Administrator for Dupont Savings & Investment Plan, 555 U.S. 285, 300 (2009) (internal citations omitted).

Section Four of the Plan contains a step-by-step guide for determining the long-term disability benefit payment for a beneficiary who is disabled and either not working or earning less than twenty (20) percent of his pre-disability earnings. It reads as follows:

> Our payment will be figured by using the following Steps 1 through 4:
> Step 1: Multiply your monthly pre-disability earnings by the benefit percentage.
> Step 2: Compare this amount to the maximum monthly payment for this plan.
> Step 3: Take the lesser of the amounts from Step 1 and 2. This is your gross monthly payment.
> Step 4: Subtract from the gross monthly payment any other income amounts except any income you earn or receive from any form of employment. This is the payment that you may receive.

(Doc. No. 29-2, Section 4).

The Plan identifies various items that constitute "other income" and which are subtracted from the gross monthly payment. Such items include "any benefits under the United States Social Security Act . . . [including] disability benefits you, your spouse, or your children receive or are eligible to receive as a result of your disability." (Id.).

Plaintiff's first claim fails because, under the terms of the Plan, Defendants have not

10

denied him any benefits. Plaintiff's general complaint is that Defendants, through the communications made to Plaintiff by various human resource employees, induced him to believe that the benefits he would receive would not be reduced or offset by other payments such as Social Security disability. The written terms of the Plan govern the allocation and distribution of benefits. In Kennedy, the Supreme Court cited the "plan documents rule" in directing plan administrators to look solely at "the directives of the plan documents" in determining how to disburse benefits. 555 U.S. at 300. This rule followed the plain text of the statute, which instructs employers to distribute benefits "in accordance with the documents and instruments governing the plan. . . . " Id. (citing 29 U.S.C. § 1104(a)(1)(D)).

Whatever oral representations Defendants made to Plaintiff are immaterial as to the question of whether benefits promised under the terms of the Plan were denied. Here, the only relevant inquiry is whether Plaintiff has made a plausible claim that Defendant has wrongfully denied him benefits which he was owed under the written terms of the Plan. The facts offered by the pleadings establish that no such denial of benefits occurred. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES Claim 1 with prejudice**.

  B.  Second Claim: Fiduciary Breach

The United States Supreme Court has recognized the rights of individual participants to sue persons acting as fiduciary under an ERISA plan for breach of fiduciary duty and to seek relief under 29 U.S.C. § 1132(a)(3). Varity Corporation v. Howe, 516 U.S. 489 (1996). To establish a breach of fiduciary duty based on misrepresentations, a plaintiff must show: (1) that a defendant was a fiduciary of the ERISA plan; (2) that a defendant breached its fiduciary responsibilities under the plan; and, (3) that the participant is in need of injunctive or other

appropriate equitable relief to remedy a violation or enforce the plan. Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 379-80 (4th Cir. 2001).

Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts. Griggs, 237 F.3d at 380 (4th Cir. 2001). Persons entrusted with conveying information about the likely future of plan benefits are acting as fiduciaries insofar as they exercise "a power 'appropriate' to carrying out an important plan purpose. Varity, 516 U.S. at 502 (internal quotation omitted). A fiduciary has "a duty to give beneficiaries upon request 'complete and accurate information as to the nature and amount of the trust property.'" Griggs, 237 F.3d at 380 (citing Faircloth v. Lundy Packing Co., 91 F.3d 648, 656 (4th Cir.1996) (quoting Restatement (Second) of Trusts § 173 (1959)). Additionally, "in limited circumstances, a trustee is required to provide information to the beneficiary even when there has been no specific request." Id. While there is no "general duty requiring ERISA fiduciaries to ascertain on an individual basis whether each beneficiary understands the collateral consequences of his or her particular election," where it is apparent to an ERISA fiduciary that "a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment," the fiduciary "cannot remain silent—especially when that misunderstanding was fostered by the fiduciary's own material misrepresentations or omissions." Id. at 381.

Plaintiff claims that Defendant US Cotton breached its fiduciary duty by failing to distribute summary plan descriptions of the Plan to participants, by failing to monitor the distribution of information regarding the Plan, and by failing to provide accurate and truthful information to Plan participants regarding the applicable reductions and offsets. Specifically, Plaintiff alleges that he considered whether to obtain additional insurance or make other financial

12

preparations but declined to do so based upon the erroneous information that the Plan would provide sixty percent of his pay and that this amount would not be offset by any amount.

Defendant forwards two general arguments. First, Defendant contends that Plaintiff has failed to allege the necessary elements insofar as he has not alleged a definite misrepresentation made to him by Defendants, or that any representatives of Defendants acted knowingly or in bad faith. Second, Defendant contends that although equitable estoppel is available for claims under § 502(a)(3), Fourth Circuit cases refusing to apply estoppel to oral plan modifications remain valid law and prevent recovery in the instant case.

Reading the facts in the light most favorable to Plaintiff, the Court finds that he has alleged a claim for breach of fiduciary duty as the facts are sufficient to raise the right to relief above a speculative level. Bell Atlantic Corp., 550 U.S. at 555. Plaintiff need not allege a specific misrepresentation but only demonstrate that Defendant had a duty to inform Plaintiff of certain information and failed to do so. The duty of a trustee to inform "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id. (quoting Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3rd Cir. 1993). Plaintiff need not demonstrate that Defendant acted knowingly or in bad faith. A fiduciary "breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." Adams v. Brink, 261 Fed.Appx 583, 595 (4th Cir. 2008) (unpublished) (quoting Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 547 (6th Cir.)).

The Court is bound by the facts pleaded by Plaintiff that are not contradicted by an exhibit. Here, Plaintiff has alleged that Defendants failed to provide him with a summary plan

description.  Indeed, Plaintiff alleges that Defendants never informed him that there were any written documents to describe the terms and conditions of the Plan.  He has alleged that he had several communications with Defendants in which they failed to inform him about a reduction in his benefits by any benefits claimed by Social Security.   Plaintiff alleges that he relied on such information in canceling his private insurance and failing to purchase additional insurance.  Whether Plaintiff will prevail on this set of facts is not a question in front of this Court at present.  The only relevant inquiry here is whether, reading the facts favorably to Plaintiff, he has stated a claim that is plausible on its face.  Iqbal, 556 U.S. at 678.

Finally, Defendants are correct in pointing out that the Fourth Circuit has not directly overruled pre-Amara cases that denied equitable relief to oral misrepresentations.  This fact, however, does not address Plaintiff's claim that Defendants failed to provide him with any written information regarding the Plan.  "The most important way in which the fiduciary complies with its duty of care is to provide accurate and complete written explanations of the benefits available to plan participants and beneficiaries."  Kenseth v. Dean Health Plan, Inc., 610 F.3d 452 (7th Cir. 2010).  Whether equitable remedies are ultimately available and appropriate will turn on the facts presented.  At this stage of litigation, the Plaintiff has pleaded sufficient facts to state a plausible claim for relief.   Accordingly, Defendants Motion for Judgment on the Pleadings is **DENIED as to Claim 2**.

    C.    <u>Third Claim: Equitable Relief</u>

Plaintiff's third claim seeks equitable relief under ERISA § 502 for breaches of fiduciary duty on the part of Plaintiff.  The factual allegations are the same for the second and third claims and do not require independent analysis.  Plaintiff has pleaded sufficient facts to state a claim for

relief that is plausible on its face. Accordingly, the Court **DENIES** Defendants Motion as to Claim 3.

    D.    <u>Attorney's Fees</u>

Plaintiff has claimed attorney's fees and costs pursuant to ERISA § 502 (g), 29 U.S.C. § 1132(g). Having recognized that Plaintiff has successfully pleaded two claims, the Court declines to dismiss his claim for attorney's fees and costs. Accordingly, the Court **DENIES** Defendants Motion as to Claim 4.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Judgment on the Pleadings (Doc. No. 34) is **GRANTED in part and DENIED in part.**

2. Defendants Motion for Judgment on the Pleadings is **GRANTED** as to Plaintiff's First Claim. The Court **DISMISSES with prejudice** Plaintiff's Claim for Wrongful Denial of Benefits Under ERISA**.**

3. Defendants Motion for Judgment on the Pleadings is **DENIED** as to Plaintiff's Second, Third, and Fourth Claims.

Signed: October 7, 2013

Robert J. Conrad, Jr.
United States District Judge