**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:12-cv-491-RJC-DCK**

| | |
|---|---|
| **ROBERT BREYAN,** )<br>)<br>    **Plaintiff,** )<br>)<br>  **vs.** )<br>)<br>)<br>)<br>**US COTTON, LLC LONG TERM** )<br>**DISABILITY PLAN; US COTTON** )<br>**LLC; and RELIANCE STANDARD** )<br>**LIFE INSURANCE COMPANY,** )<br>)<br>    **Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Judgment on the Pleadings and Supporting Memorandum (Docs. 52, 53), and Plaintiff's Response in Opposition (Doc. 55). It is ripe for review.

**I. BACKGROUND**

This case possesses a winding procedural history that need not be recounted here. Of relevance is the order issued by the Court on October 7, 2013 addressing the Motion for Judgment on the Pleadings filed by Defendants US Cotton and US Cotton, LLC, (collectively: the Company), Plaintiff's former employer and plan administrator. In the October 7 order – which statement of facts is incorporated here – the Court dismissed Plaintiff's claim (First Claim) for wrongful denial of benefits, but declined to dismiss his claims for fiduciary breach, equitable relief or attorney's fees. (Doc. 50).

One month after the issuance of that order, Defendant Reliant Standard Life Insurance (Reliance) moved in its own name under Rule 12(c) for judgment on the pleadings. (Doc. 53). The facts relevant to this motion are drawn from Plaintiff's complaint.

A. Plaintiff's Allegations

Plaintiff's allegations against Reliance, taken here as true, are the following:

- That, approximately two months before he was scheduled to receive long-term disability benefits under the Plan, a representative from Reliance called him. (Doc. 1: Complaint ¶55).

- That the Reliance representative told Plaintiff that Reliance was helping Defendant US Cotton manage the Plan; that Reliance wanted Plaintiff to become eligible for Social Security; and, that the representative asked Plaintiff to sign paperwork allowing Reliance to be Plaintiff's "advocate" for Social Security benefits. (Id. ¶ 58)

- That the Reliance representative "told Plaintiff that any Social Security disability benefits Plaintiff received would offset his long-term disability benefits under the Plan. Plaintiff responded, "Are you kidding me? I was never told anything about an offset?" (Id. ¶60).

- That the same representative "told Plaintiff, 'No – this happens all the time. You don't know how many phone calls I get where everybody says that same thing – they didn't know. If they had known, they would have done something different.'" (Id. ¶61).

- That representatives from Reliance "continued to call Plaintiff and ask him if he had received Social Security disability benefits yet," and "continued to ask to be Plaintiff's advocate for those benefits." (Id. ¶66).

- In response to Plaintiff's objections that he did want Reliance's help obtaining Social Security, (Id. ¶66), the representatives from Reliance "told Plaintiff that the Plan had written guidelines and that they were using these guidelines in trying to offset his long-term disability payments by any Social Security payments he received." (Id. ¶67)

- Reliance stopped payments of disability benefits to Plaintiff for three months and informed Plaintiff that he would not receive any disability benefits under the Plan unless he provided all documentation concerning his receipt of Social Security disability benefits. (Id. ¶69).

- Reliance required Plaintiff to reimburse it for approximately $6,000 in

       overpayments to Plaintiff.  (Id. ¶ 71).

- Plaintiff did not have the funds to make such reimbursement.  (Id. ¶72).  Reliance has withheld $100 per month to recoup the overpayment.  (Id. ¶73).

## II.    STANDARD OF REVIEW

Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6).  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  Mylan Labs Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993).  But the court need not accept allegations that "contradict matters properly subject to judicial notice or by exhibit."  Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006).  The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic."  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also FED. R. CIV. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes.").  In contrast to a Rule 12(b)(6) motion, the court may consider the answer as well on a motion brought pursuant to Rule 12(c).  Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 563.  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

## III. DISCUSSION

Plaintiff's first claim was dismissed and his second claim was directed solely at the Company. As both parties agree that only Plaintiff's third and fourth claims are at issue here, the Court limits its focus to these.

### A. Section 502(a)(3)

Section 502(a)(3) is a "catchall" provision that serves "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). "When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." Coyne v. Delany v. Blue Cross & Blue Shield, 102 F.3d 712, 715 (4th Cir. 1996). Having already denied Plaintiff's claim for wrongful denial of benefits, the issue here is whether Plaintiff has alleged a plausible claim for equitable relief against Reliance beyond merely the denial of benefits, for which relief is already available under different sections of ERISA.

To state a claim for breach of fiduciary duty under § 502(a)(3), the Plaintiff must establish that: (1) the Defendant was a fiduciary of the ERISA plan; (2) the Defendant breached its fiduciary responsibilities under the plan; and (3) injunctive or other equitable relief is necessary to remedy the breach.

1.  Fiduciary Duty

Reliance argues that because it is not the Plan administrator and had no communication with Plaintiff regarding benefits until after his disability, it did not possess any fiduciary duties to Plaintiff that are implicated in the facts alleged. Whether Plaintiff is entitled to equitable relief under §502(a)(3) therefore turns on two questions: first, whether Reliance had a fiduciary duty to Defendant, and, second, whether equitable relief is appropriate. Reliance contends that Plaintiff can establish neither of these.

Defendant contends that a formal fiduciary relationship must be recognized to trigger liability under ERISA § 502(a)(3). This argument swims against a strong current of federal court decisions, the most significant of which is the Supreme Court's decision in Harris Trust and Savings Bank v. Salomon-Smith Barney, Inc., 530 U.S. 238, 246 (2000). In Harris Trust, the Court held that section 502(a)(3) does not require a formal fiduciary relationship, but focuses instead on the "act or practice" which violates any provision of ERISA Title I. Id. (citing 29 U.S.C. § 1132(a)(3)) (emphasis omitted). Rather than limit the class of parties subject to suit under section 502, the Court found that the only limiting factor was that specified in the statute, namely that the relief sought be "appropriate equitable relief." Id. at 250.

Plaintiff has alleged (and the Court regards as true) that Defendant's agents contacted him, communicated to him that Reliance was helping the Company manage the plan, and requested that Plaintiff sign paperwork allowing Defendant to be his "advocate" for Social Security benefits. (Complaint ¶58). At this stage of pleading, Plaintiff has stated a plausible claim that Reliance, by contacting Plaintiff and informing him about his benefits, had assumed the obligations attendant to plan administrators. Following the logic of Harris, the Court finds that once such communications were made, Reliance assumed the duty to provide accurate

information to Plaintiff and to act in his best interests. Under common law trust principles, a fiduciary has an unyielding duty of loyalty to the beneficiary. Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371 (4th Cir. 2001) (citing Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 152-53 (1985)) (Brennan J., concurring) ("Congress intended by §404(a) to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits.").

The facts here allege a plausible breach of loyalty on the part of Reliance whose purpose in obtaining Social Security benefits for Plaintiff arguably stemmed less from a genuine concern for Plaintiff than a desire to offload his expenses onto a third party. This act, in itself, is not a breach of duty as it is no harm to Plaintiff to receive funds from one source versus another. However, failing to inform Plaintiff of the financial consequences, including tax consequences and a reimbursement of several thousand dollars, constitutes a valid allegation of an injury to Plaintiff. "ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" Varity, 516 at 506. (quoting ERISA 404(a); 29 U.S.C. § 1104(a)). Here, the facts alleged suggest that Reliance, who had not previously had any communications with Plaintiff, initiated such solely for its own benefit rather than that of the plan participant.

  2.  Appropriate Equitable Relief

Plaintiff seeks "appropriate equitable relief" from Reliance rather than monetary damages. Normally, equitable relief applies only where an injury cannot be remedied by monetary damages. See Hughes Network Systems, Inc. v. Interdigital Communications Corp., 17 F.3d 691, 693-94 (4th Cir. 1994). Under 502(a)(3), equitable relief can include equitable

liens or constructive trusts where money in a defendant's possession and belonging to a plaintiff can clearly "be traced to particular funds or trusts in defendant's possession." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002).

Here, the equitable relief sought by Plaintiff amounts to ordering Defendants, via equitable estoppel and specific performance, to pay Plaintiff, including retroactively, the full amount of the policy without withholding funds received by Plaintiff from Social Security. This claims fails, however, because the Plaintiff has alleged no communications with Reliance regarding future benefits that occurred prior to the time that he was disabled. Another form of "appropriate equitable" relief available here amounts to a court order requiring Reliance to reimburse to Plaintiff the funds withheld by it due to the overpayment. This, however, is properly a claim at law rather than equity insofar as it resembles most closely a remedy imposing personal liability on Reliance. See Mertens v. Hewitt Associates, 508 U.S. 248, 256 (1993). Plaintiff here is not asking the Court to force Reliance to turn over funds that properly belong to Plaintiff, but to impose monetary damages for not explaining the full consequences of his election to receive Social Security benefits. This is a request for legal rather than equitable relief and is not available under § 502(a)(3).

However, Plaintiff has alleged one area where equitable relief is available: enjoining Reliance from collecting the remainder of the monies owed to it due to overpayment. Whether such relief is appropriate will turn on the facts presented on the merits of this case. It suffices that Plaintiff has alleged sufficient facts to establish a plausible case for appropriate equitable relief. Accordingly, the Court **DENIES** Defendant Reliance's Motion for Judgment on the Pleadings.

Having found that some form of appropriate equitable relief is available in this case, the

Court likewise declines to dismiss Plaintiff's claim for attorney's fees. Accordingly, the Court **DENIES** Defendant Reliance's Motion for Judgment on the Pleadings (Doc. 52).

## IV.     CONCLUSION

Having found no appropriate equitable relief available, the Court **DENIES** Defendant Reliance's Motion (Doc. 52). Further, the Court **orders Defendant Reliance to hold in escrow any funds withheld from Plaintiff between the issuance of this order and the resolution of this case.**

It is so ordered.

_____
Robert J. Conrad, Jr.
United States District Judge